**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CORRY THOMPSON, | :: | CIVIL ACTION NO. |
| BOP Reg. # 55173-019, | :: | 1:08-CV-1595-TWT |
| Movant, | :: | |
| | :: | CRIMINAL ACTION NO. |
| v. | :: | 1:03-CR-684-TWT-1 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | MOTION TO VACATE |
| Respondent. | :: | 28 U.S.C. § 2255 |

## ORDER AND OPINION

Movant Corry Thompson challenges the constitutionality of his judgment of

conviction in this Court. Now before the Court are his 28 U.S.C. § 2255 Motion to

Vacate Judgment [170], the Government's Response [173], and Thompson's Motion

to Alter/Amend Petition [191].

## I.      Procedural History

On November 18, 2003, a grand jury sitting in the Northern District of Georgia

indicted Thompson [1] for being a convicted felon in possession of a firearm (count

one), for possessing cocaine powder, crack cocaine, marijuana, and ecstasy with the

intent to distribute each drug (counts two through five), and for possessing a firearm

in furtherance of a drug trafficking crime (count six), all based on evidence gathered

from or near a Palmetto Street house in Atlanta, Georgia, on October 23, 2003. The

AO 72A
(Rev.8/82)

government filed a notice [37] that if Thompson were convicted, it would seek an enhanced sentence under 21 U.S.C. § 851, based on his prior felony drug convictions. This Court denied Thompson's pretrial motion to suppress evidence [41], and his September 2004 trial ended without a verdict when the jury deadlocked on all counts [50-54].

On March 1, 2005, a grand jury returned a superseding indictment against Thompson [89], adding five counts based on evidence gathered from an Oglethorpe Avenue apartment in Atlanta, Georgia, on October 1, 2002. In addition to the six original counts, the indictment charged Thompson as a convicted felon in possession of a firearm and an armed career criminal (count seven), for possessing powder cocaine, crack cocaine, and ecstasy with the intent to distribute each drug (counts eight through ten), and for possessing a firearm in furtherance of a drug trafficking crime (count eleven). The Court denied Thompson's motion to sever the counts arising from the two separate incidents into two separate trials and also denied his motion to suppress evidence of his three prior felony drug convictions [126]. At his second trial, held April 18-25, 2005 [127-133], the jury convicted him on all eleven counts.

Thompson received four life sentences – two for being a convicted felon in possession of a firearm (counts one and seven) and two for trafficking in crack cocaine

2

(counts three and nine); concurrent sentences of 120 to 360 months for his remaining drug trafficking convictions (counts two, four, five, eight, and ten); and consecutive sentences of 60 and 300 months for possessing a firearm in furtherance of a drug trafficking crime (counts six and eleven) [140].

Thompson filed a direct appeal, challenging his sentence enhancements under 21 U.S.C. § 851, "the denial of his motion to suppress, the denial of his motion to sever, the admission of prior convictions evidence, . . ., the sufficiency of the evidence to convict him of counts one through six (the Palmetto Street house charges), and the sufficiency of the evidence to convict him of counts seven through eleven (the Oglethorpe Avenue search)." United States v. Thompson, 473 F.3d 1137, 1139, 1141 (11th Cir. 2006). The Eleventh Circuit affirmed Thompson's convictions and sentences, summarily denying all but the first and last issues set forth above because none of the remaining issues was "substantial enough to merit discussion." Id. at 1141, 1147. See also United States v. Thompson, 335 F. App'x 876 (11th Cir. 2009) (discussing Palmetto Street counts in course of affirming denial of Thompson's motion for new trial). Thompson's application for certiorari review on direct appeal was denied on April 30, 2007. Thompson v. United States, 550 U.S. 928 (2007).

3

On April 24, 2008, Thompson filed a counseled motion for a new trial [169] because two Atlanta police officers who had been involved in the Oglethorpe Avenue search had been convicted of serious misconduct in connection with drug searches conducted after Thompson's arrest and trial. This Court denied Thompson's new trial motion on October 24, 2008 [180], and the Eleventh Circuit affirmed on June 30, 2009. Thompson, 335 F. App'x at 877.

In his *pro se* § 2255 motion to vacate his sentence, docketed on April 28, 2008, Thompson raises four issues: (1) his due process rights were violated when the government bolstered the testimony of its key witness, a confidential informant named Toi Newman; (2) his trial counsel provided ineffective assistance by not challenging the superseding indictment; (3) his trial counsel provided ineffective assistance by not challenging the impermissible process by which Newman identified Thompson; and (4) the cumulative effect of trial counsel's errors violated his due process right to a fair trial. (Mot. Vacate at 9, 21, 31, 43.) Thompson seeks to amend his § 2255 motion to add a claim that his motion-for-new-trial counsel was ineffective for failing to inform this Court that on April 7, 2008, Newman "provided a statement materially different from that in which he testified to [sic]." (Mot. Alter/Amend at 2.)

4

## II.     28 U.S.C. § 2255 Review

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

### A.     Claims Procedurally Defaulted or Previously Addressed

In general, "an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (citation omitted).

> When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. Alternatively, under the fundamental miscarriage of justice exception, in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a

5

federal habeas court may grant the writ even in the absence of a showing
of cause for the procedural default.

Id. (Citations and internal quotations omitted.)

To establish cause, a movant must show either that his counsel's assistance was
so ineffective that it violated his Sixth Amendment right to counsel or "that some
objective factor external to the defense impeded counsel's efforts to comply with the
. . . procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "To establish
'prejudice,' a [movant] must show that there is at least a reasonable probability that the
result of the proceeding would have been different" had he presented his defaulted
claim. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). See Lynn v. United
States, 365 F.3d 1225, 1235 n.21 (11th Cir. 2004) (noting that "cause and actual
prejudice standard" for § 2255 motion "mirrors the standard used to evaluate collateral
attacks on state convictions"). To demonstrate actual innocence, a movant must
"support his allegations of constitutional error with new reliable evidence . . . that was
not presented at trial," thereby showing "that it is more likely than not that no
reasonable juror would have found [movant] guilty beyond a reasonable doubt."
Schlup v. Delo, 513 U.S. 298, 324, 327 (1995).

6

In ruling on a § 2255 motion, a federal district court "is not required to reconsider claims of error that were raised and disposed of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000).

### B.      The Law of Ineffective Assistance of Counsel

A defendant does not procedurally default an ineffective-assistance-of-counsel claim by not raising it on direct appeal. Massaro v. United States, 538 U.S. 500, 508-09 (2003) (noting that it is preferable to raise that claim in § 2255 motion and that failure to raise it "on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). The Supreme Court set forth the standard for evaluating a claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). The analysis involves two components, but a court need not address both if the movant "makes an insufficient showing on one." Id. at 697. First, the court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690. The court should be "highly deferential" in scrutinizing counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In other words, the movant "must overcome the presumption that, under the circumstances, the

7

challenged action might be considered sound trial strategy." Id. (Internal quotations omitted). "Given the strong presumption in favor of competence, the [movant's] burden of persuasion–though the presumption is not insurmountable–is a heavy one." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability," one "sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

## III.   Discussion

### A.   Government Bolstering of Confidential Informant

In his first ground for relief, Thompson alleges that his due process rights were violated when the government bolstered the credibility of its confidential informant, Toi Newman, before Newman's credibility had been called into question by the

defense. (Mot. Vacate at 9-20.) Trial counsel objected to this credibility testimony, but appellate counsel did not raise the issue on direct appeal. Therefore, Thompson has procedurally defaulted this claim, and he can avoid the procedural default only by demonstrating either cause and prejudice or his actual innocence. Thompson has offered no new, reliable evidence of his actual innocence. He argues, instead, that he can show cause and prejudice to excuse his procedural default because his appellate counsel's ineffectiveness prevented him from presenting this claim to the Eleventh Circuit, where it might have succeeded. (Id. at 17-20.)

In fact, however, as Thompson acknowledges, Newman did not identify Thompson at his trial as the person at the Oglethorpe Avenue apartment who sold Newman drugs in late September 2002. (See id. at 16.) Therefore, it is unlikely that improper bolstering of Newman's credibility affected Thompson's convictions on the last five counts of his superseding indictment. Moreover, as set forth in detail below, the Eleventh Circuit concluded that "there was plenty of evidence" to convict Thompson with respect to the drug trafficking activity at the Oglethorpe Avenue apartment in October 2002 and at the Palmetto Street house in October 2003, Thompson, 335 F. App'x at 878, the great bulk of which did not involve Newman's identification of Thompson.

9

On direct appeal, the Eleventh Circuit presented the following exhaustive analysis of the facts and law supporting Thompson's convictions.[1]

> Thompson contends that the district court erred in denying his motion for a judgment of acquittal because no rational jury could have found beyond a reasonable doubt that he possessed the drugs and firearms that were seized in the search of the Oglethorpe Avenue apartment in October 2002. He argues that the evidence against him proved nothing more than his presence in the apartment some time before the search was conducted. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict. United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989). It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt. United States v. Mieres-Borges, 919 F.2d 652, 656 (11th Cir. 1990).

> To convict Thompson the government must have proved beyond a reasonable doubt that he knowingly possessed the drugs with intent to distribute them. United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). Thompson does not dispute that whoever had possession of the drugs in the apartment intended to distribute them. He simply argues that there was not enough evidence to prove that he was the person who possessed them. Possession can be actual or constructive and can be shown through direct or circumstantial evidence. Mieres-Borges, 919 F.2d at 657 (citing United States v. Pantoja-Soto, 739 F.2d 1520, 1525 (11th Cir. 1984)). Constructive possession exists where the defendant had

---

[1] As noted above, the Eleventh Circuit did not address the Palmetto Street evidence on direct appeal, but did so when Thompson appealed the denial of his motion for a new trial. See Thompson, 335 F. App'x at 879-80.

10

dominion or control over the drugs or over the premises where the drugs were located. Poole, 878 F.2d at 1392; United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006) ("[A] person who owns or exercises dominion and control over a . . . residence in which contraband is concealed may be deemed to be in constructive possession of the contraband . . . ." (quoting United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983))). However, a defendant's "mere presence in the area of contraband or awareness of its location is not sufficient to establish possession." Mieres-Borges, 919 F.2d at 657 (quoting United States v. Maspero, 496 F.2d 1354, 1359 (5th Cir. 1974)).

In support of his mere presence defense Thompson cites Mieres-Borges, a case where we held that there was not enough evidence to prove that one of the defendants ever had possession of some cocaine that the government had discovered on a beach. Id. at 659-60. The defendant was not on the beach when he was arrested, but instead was on a boat that the government suspected had been used to transport the drugs to the beach. Id. at 658-59. There was no evidence tying the defendant directly to the drugs, no evidence establishing that the defendant had been on the beach where the drugs were found, and no evidence actually establishing that the boat the defendant was on had transported the drugs. Id. at 658-60. The defendant's presence in the general area where the drugs were found did nothing more than create a suspicion of guilt. Id. at 659.

In contrast with Mieres-Borges, the evidence here links Thompson to the very location the drugs were found, and it does more. Documents that were undisputedly Thompson's were found beside the powder and crack cocaine on one of the beds in the apartment. Those documents establish a continuous relationship between Thompson and Deidric Park, a resident of the apartment who was arrested when the police executed the warrant and who was unquestionably involved in the distribution of the drugs. Some of the documents showed that six weeks before the search, Thompson had received traffic tickets while driving Parks' car less than one-and-a-half miles from the apartment. Other documents

11

involving Thompson's Red Cross relief application were dated one day before the apartment search, which was shortly after the informant purchased drugs at the apartment. Thompson never did explain why the address he listed on the relief application papers differed from the one on the traffic citations.

The third document of Thompson's that was found next to the powder and crack cocaine on the bed was a list of phone numbers from his cell phone. An officer testified that such lists were routinely used by drug dealers to contact purchasers. That inference was bolstered by the nature of the names on the list – "Bald Head," "Big Boy," "Whiteboy," and the like – and by testimony that drug dealers often listed their customers by pseudonyms.

Then there is the fact that Thompson testified. He denied any involvement with drug sales in the Oglethorpe Avenue apartment, but he gave conflicting testimony about whether he had ever been in that apartment. On direct examination Thompson stated that he had been in the apartment, but on cross-examination he stated that he was never there. He testified that on the day the officers executed the warrant he was renting a house on Beckwith Street and that he had been living at that house when he was cited while driving Parks' car, but the citations listed his residence as Welcome All Terrace in Atlanta, which is at another address. The court also permitted the government to introduce for impeachment purposes evidence of six prior felony convictions, as well as evidence that Thompson had given false testimony at an earlier hearing in this case and that he has [a] history of giving false names to the police.

The jury had the opportunity to hear Thompson's testimony, to observe his demeanor, and to evaluate his truthfulness. If the jury concluded that Thompson was lying, as it had plenty of reason to do, the jury was entitled under United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995), and similar decisions to infer that the opposite of his testimony was true.

12

As to the firearms counts stemming from the two handguns found at the Oglethorpe Avenue apartment, one charged Thompson with being a felon in possession of those handguns, and the other charged him with possessing them in furtherance of a drug trafficking crime. With firearms, "[p]ossession may be either actual or constructive." United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). Like constructive possession of drugs, the government can establish constructive possession of a firearm by proving "ownership, dominion, or control over the firearm." Molina, 443 F.3d at 830 (citing United States v. Ferg, 504 F.2d 914, 916 (5th Cir. 1974) (internal quotations omitted)). To establish possession of a firearm "in furtherance" of a drug trafficking crime, there must be "some nexus between the firearm and the drug selling operation." Id. (quoting United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002)). "The nexus between the gun and the drug operation can be established by . . . 'accessibility of the firearm, . . . proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.'" Id. at 829-30 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Because the two handguns found at the Oglethorpe Avenue apartment were readily available, although hidden, in the living room where drugs were being packaged for sale, there was enough evidence for the jury to find that they were possessed in furtherance of the drug business by those who were in it. See Molina, 443 F.3d at 830. The same evidence we have already discussed, including inferences the jury could have drawn from Thompson's testimony, that was sufficient to convict him of participating in the drug distribution out of the apartment is also sufficient to prove that he was guilty of constructively possessing the firearms to further the drug distribution. See id. (concluding that sufficient evidence existed to support firearms verdict where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money).

Because all of the evidence, including the inferences the jury could draw from Thompson's testimony, was sufficient to convict him on the

13

Oglethorpe Avenue drug and firearms counts, the district court did not err in denying his motion for judgment of acquittal.

Thompson, 473 F.3d at 1142-44.

Later, when Thompson appealed the denial of his motion for a new trial, the Eleventh Circuit expanded upon its prior analysis. First, the court noted that previously it had "held that there was plenty of evidence to connect Thompson to both the Palmetto Street house and the Oglethorpe Avenue apartment, and thus to connect him by constructive possession to the guns and drugs found at those addresses." Thompson, 335 F. App'x at 878. The court continued as follows.

> The district court did not abuse its discretion by deciding that Thompson had failed to demonstrate that a new trial "would probably produce a different result." [United States v. ]Jernigan, 341 F.3d [1273,] 1287 [(11th Cir. 2003)]. First, the search of the Palmetto Street house in October 2003 remains above reproach. None of the officers who were later investigated for misconduct were involved in that search. A confidential informant testified at the trial that he had purchased drugs from Thompson himself at the Palmetto Street house. An officer testified that he observed Thompson entering the house using a key and carrying a dog food bag that was later found full of drugs. Officers also observed Thompson leaving the Palmetto Street house and locking the door with his key. A few minutes later, when they pulled over Thompson's car, he threw the house keys onto the ground and walked away from them. Six or seven officers entered the Palmetto Street house, including not only Atlanta police but also a Georgia parole officer and an ATF [Alcohol, Tobacco, & Firearms] agent. Both of these outside-agency officers provided corroborating testimony about the search and the drugs that were found there. None of the evidence and none of the officers involved

14

in the Palmetto Street search have ever been called into question. Thus, there is certainly no showing that "a new trial would probably produce a different result" with regard to the six counts stemming from the Palmetto Street search. See Jernigan, 341 F.3d at 1287.

Thompson focuses instead on the Oglethorpe Avenue search. He contends that because the two officers primarily responsible for that search – Sergeant Stallings, who procured the warrant, and Officer Junnier, who led the search – were later convicted of civil rights violations involving warrantless searches, lying to magistrate judges, manslaughter, and planting evidence, that he has shown that a new trial would probably produce a different result. Thompson argues that United States v. Espinosa-Hernandez, 918 F.2d 911, 913-14 (11th Cir. 1990), requires a new trial, or at least an evidentiary hearing.

In that case, the defendant had been convicted of conspiracy to import cocaine based on evidence from a drug sting headed by Customs Special Agent David Urso. Espinosa-Hernandez, 918 F.2d at 913. After the trial, Espinosa learned that Urso had made false statements to the grand jury and in an affidavit relating to Espinosa's case. Id. Urso had also been indicted for lying about his previous sale and use of drugs on his application to become a customs agent, and he was under investigation for distribution of cocaine and for aiding the escape of an incarcerated government informant. Id. Espinosa argued that Urso had played a key role in his conviction by testifying that Espinosa had been anxious to accept the cocaine, which Espinosa (who never possessed any of the drugs) had vigorously denied. Urso had also told the court that a witness Espinosa had sought was a government informant who was unavailable to testify. Id. In light of Urso's misconduct, we held that discovery might show "that Urso committed perjury in Espinosa's trial or a related proceeding" and stated that his testimony "had a tremendous impact" on the conviction. Id. at 913-14. We remanded the case for an evidentiary hearing concerning Urso's misconduct as it related to the new trial motion. Id. at 914.

15

Thompson's case is different. In Espinosa-Hernandez, we knew that Urso had made false statements to the grand jury *in that case* and had submitted a false affidavit *in that case*. Moreover, Urso's misconduct, as shown by the investigation into his activities and his indictment, reached all the way back to the beginning of his service as a customs agent, meaning that his lies about his sales and use of drugs, as well as other possible misconduct, had occurred before the sting and trial that led to Espinosa's conviction. As we noted, that also raised the possibility that the U.S. Attorney's office had violated Bagley or Giglio by failing to disclose exculpatory or impeaching information. Id. at 914.

By contrast, in this case Officer Junnier and Sergeant Stallings' convictions were based on events that occurred in late 2005 and late 2006 – three to four years after the Oglethorpe Avenue search and six to eighteen months after Thompson's trial. In other words, there is no evidence that the Atlanta narcotics officers committed any misconduct until more than three years after the Oglethorpe Avenue search. *In fact, the confidential informant involved in both the Palmetto Street and Oglethorpe Avenue drug buys recently confirmed his 2005 testimony against Thompson in an interview with Thompson's counsel.* That informant worked for at least five years with many police officers, including ones who were never investigated, and has made hundreds of drug buys.

Moreover, there remains substantial evidence of Thompson's role in the Oglethorpe Avenue drug operation and thus of his guilt. When the six officers entered the Oglethorpe Avenue apartment, they found four people inside, as well as over 100 grams of cocaine, 50 grams of crack cocaine, 318 doses of ecstasy, two guns, baggies, and scales. The drugs were found in a safe, in both bedrooms, in a closet, and in the kitchen. Believing that six officers planted all of that evidence and photographed it in the presence of four suspects requires a big stretch of the imagination.

16

And in addition to the drugs, guns, and paraphernalia, the officers found "[d]ocuments that were undisputedly Thompson's," including three traffic citations that Thompson had received less than two miles from the Oglethorpe Avenue address and while driving a car owned by another occupant (who unquestionably was involved in the drug operation). Thompson, 473 F.3d at 1142-43. The police also found a Red Cross application filled out by Thompson and dated just one day before the search. Id. Finally, there was a list of phone numbers and nicknames – a drug dealer's address book – that matched Thompson's cell phone records. Id. All of these documents were found in one of the bedrooms, along with more than 100 grams of powder cocaine and 10 grams of crack. In addition to the amount of drugs, the paperwork that undoubtedly belonged to Thompson connected him to the Oglethorpe Avenue address and dispels any reasonable inference that the evidence against him was somehow faked.

Finally, Thompson testified at his trial. About the Oglethorpe Avenue address, he first conceded that he had been in that apartment but on cross-examination denied that he had ever been there. Id. at 1143. The government presented evidence that Thompson had six prior felony convictions, as well as evidence that he had repeatedly lied to police about his identity and had given false testimony in an earlier hearing in this same case. Id. at 1143.

In sum, there is plenty of evidence to dispel any concern that Officer Junnier or any other officer planted the evidence against Thompson. Notably, Thompson does not even argue that the evidence against him was fabricated; instead, he argues essentially that he could impeach the officers in a new trial in light of their later misconduct. But to the extent that is his goal, under Jernigan impeachment evidence alone is not enough to merit a new trial. 341 F.3d at 1287. In any event, Thompson would not be entitled to a new trial so that he may impeach a witness based on that person's actions that occurred after his original trial. Thompson, in effect, is arguing that his first trial was unfair because

17

the police did not testify that they would, years later, commit crimes and other misconduct in similar cases. That is not a reason for a new trial.

Id. at 879-82 (third emphasis added).

As noted above, in order for Thompson to prevail on his ground one claim, he must demonstrate that he was prejudiced by appellate counsel's failure to raise the claim on direct appeal, i.e., he must demonstrate that "there is at least a reasonable probability that the result of the proceeding would have been different" had appellate counsel presented his defaulted claim. Henderson, 353 F.3d at 892. However, in light of all the evidence presented at trial to establish Thompson's guilt, as set forth above, only a small portion of which involved Newman's testimony, there is no reasonable probability that the Eleventh Circuit would have reversed any of Thompson's convictions based on the government's allegedly improper bolstering of Newman's credibility. See United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (applying harmless error standard on direct appeal, which standard does not require reversal of conviction if trial error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict"). Notably, Thompson does not claim that the warrants for the searches of the Oglethorpe Avenue apartment in October 2002 and of the Palmetto Street house in October 2003 were obtained illegally

18

based on false information or fabricated testimony arising from Newman's confidential informant activities. Thompson's ground one claim fails.

### B. Trial Counsel's Failure to Challenge Superseding Indictment

Thompson next contends that instead of seeking separate trials on the incidents at the two separate locations, trial counsel should have filed a motion to dismiss the additional counts in the superseding indictment. Thompson argues that the government's intentional delay in bringing these counts (1) gave it a tactical advantage at the second trial because he was left with very little time to prepare his defense, and (2) deprived him of the opportunity to defend against those charges at his first trial, when he still had the resources to retain counsel of his choice to do so. (Mot. Vacate at 21-30.)

However, "to prove a due process violation as the result of" a delay in a superseding indictment, "the defendant must show '(1) actual prejudice to [his] defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage.'" United States v. Wilk, No. 04-60216, 2005 U.S. Dist. LEXIS 11625, at *10 (S.D. Fla. Apr. 15, 2005) (quoting United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995)). "The defendant's burden is a heavy one." Id. See also United States v. Anderson, 329 Fed. Appx. 878, 883 (11th Cir. 2009)

19

(stating that to prevail on challenge to additional charges in superseding indictment – based on prejudice to defendant due to lack of time to prepare defense to those charges – "defendant must identify relevant, non-cumulative evidence" that he would have presented if given more time to prepare) (citing <u>United States v. Saget</u>, 991 F.2d 702, 708 (11th Cir. 1993)).

Thompson has not demonstrated how his defense was prejudiced by the addition of the Oglethorpe Avenue counts six weeks before the start of his second trial. He has not identified any "relevant, non-cumulative evidence" that he would have presented if given more time to prepare, <u>see</u> <u>Anderson</u>, 329 Fed. Appx. at 883, nor has he shown how it would have been possible for him to avoid a second trial had the Oglethorpe Avenue counts been included in the original indictment. He also has not demonstrated "a deliberate design by the government to gain a tactical advantage." <u>See</u> <u>Thomas</u>, 62 F.3d at 1339. A more plausible explanation for the addition of the Oglethorpe Avenue counts in the superseding indictment is that the government omitted them from the original indictment to reduce the amount of evidence it would need to present at trial, and only added them later after the difficulties it had encountered at the first trial, which ended in a mistrial.

20

Moreover, both this Court and the Eleventh Circuit found no merit in Thompson's motion for separate trials. Therefore, there is no reasonable probability, "sufficient to undermine confidence in the outcome" of Thompson's trial or appeal, that "but for counsel's unprofessional errors, the result[s] of the proceeding[s] would have been different," i.e., that this Court or the Eleventh Circuit would have found that the additional counts in the superseding indictment, which were so intertwined with the original counts that they did not warrant even a separate trial, should have been dismissed outright. See Strickland, 466 U.S. at 694; see also Shere, 537 F.3d at 1310. Thompson's ground two claim also fails.

### C.    Trial Counsel's Failure to Challenge Identification Procedure

Like his first ground for relief, Thompson's third ground is based on the allegedly prejudicial effect of confidential informant Newman's testimony. This time, Thompson contends that improper procedures were used to obtain Newman's identification of Thompson as the person at the Palmetto Street house who sold him drugs in October 2003. (Mot. Vacate at 31-42.) However, as set forth in detail above, there was much evidence linking Thompson to the drugs and firearms found at the Palmetto Street house even without Newman's eyewitness identification, so much so that there is no reasonable probability, "sufficient to undermine confidence in the

21

outcome" of Thompson's trial or appeal, that "but for counsel's unprofessional errors, the result[s] of the proceeding[s] would have been different" had counsel challenged the procedures used to obtain Newman's identification of Thompson. See Strickland, 466 U.S. at 694; see also Shere, 537 F.3d at 1310. Ground three also fails.

### D.    Cumulative Errors by Trial Counsel

Thompson argues that counsel's cumulative errors violated his due process right to a fair trial. (Mot. Vacate at 43-51.) In addition to the errors alleged in grounds one through three above, Thompson specifically claims only that he was prejudiced by counsel's failure to (1) determine the contents of an Atlanta Police Department file that purportedly contained six photographs Officer Battle showed Newman in a photographic array used to identify Thompson shortly after Newman's October 7, 2003 drug purchase at the Palmetto Street house, and (2) object to the government's use of Officer Battle, an important government witness, during the voir dire proceedings, which "gave the Government an unfair advantage of making the jury more familiar with Battle." (Id. at 46-47.) Because this Court already has determined that grounds one through three lack merit, and because Thompson has presented only speculation to support a conclusion that he was prejudiced in connection with his remaining "claims" of ineffective assistance of counsel, his ground four claim also fails. See

United States v. Lopez, 590 F.3d 1238, 1258 (11th Cir. 2009) (stating that, "[h]aving already . . . [rejected appellant's specific claims of trial error], we also conclude, from our review of the trial as a whole, that the cumulative effects of those alleged errors did not deny [appellant] a fair trial").

### E.    Motion-for-New-Trial Counsel's Failure to Present Evidence

In his motion to alter or amend his § 2255 motion, Thompson seeks to add a claim that his motion-for-new-trial counsel was ineffective for failing to present evidence to this Court that Newman, the government's confidential informant, gave a statement in 2008 contradicting his 2005 trial testimony identifying the person who sold him drugs at the Oglethorpe Avenue apartment. (Mot. Alter/Amend at 2.) To support his claim, Thompson has presented an "Investigative Report," purportedly prepared by Brenda Lewis on April 7, 2008, indicating that Newman "recalls that when he purchased the drugs at the apartment he purchased them from Cory Thompson, and he stated that when he purchased the drugs at the house, he purchased them from Cory as well." (Id. Attach. 1.) However, as the Eleventh Circuit noted in affirming the denial of Thompson's motion for a new trial, "the confidential informant involved in both the Palmetto Street and Oglethorpe Avenue drug buys recently confirmed his 2005

23

testimony against Thompson in an interview with Thompson's counsel." <u>Thompson</u>, 335 F. App'x at 881.

Regardless of the precise procedural posture of Thompson's final claim, set forth in his motion to amend, the claim fails because the alleged change in Newman's story is inculpatory of Thompson, not exculpatory, and because, as noted with respect to Thompson's first and third grounds for relief, there was more than sufficient evidence to link Thompson to his crimes of conviction without Newman's testimony. Thompson's motion to amend his § 2255 motion is granted, and his final ground for relief, set forth therein, is denied.

## IV.   Certificate of Appealability

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of his motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a § 2255 movant. Rule 11(a) of the Rules Governing Section 2255 Proceedings (also providing that "[i]f the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

24

A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)). Although Slack involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. See Jones v. United States, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying Slack standard in § 2255 case).

The Court finds that Thompson has not raised an issue of arguable merit and denies him a certificate of appealability.

25

**V.      Conclusion**

For the foregoing reasons, the Court **GRANTS** Thompson's motion to amend his 28 U.S.C. § 2255 motion [191]; **DENIES** his 28 U.S.C. § 2255 motion [170], as amended; **DISMISSES** this action; and **DENIES** Thompson a certificate of appealability.

SO ORDERED, this 3 day of February, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

26